IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIAH MARTINEZ,

   **Plaintiff,**

v.          **No. 1:14-cv-0841 RB/KBM**

THE CITY OF RIO RANCHO,

   **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** came before the Court upon Defendant's Motion for Summary Judgment to Dismiss All Remaining Claims. (Doc. 49.) Jurisdiction is based on 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court will **GRANT** the motion.

## I. Background

On January 25, 2014, Plaintiff was driving in Rio Rancho, New Mexico, when she saw an oncoming vehicle that she thought had its high beam headlights turned on. Plaintiff flashed her headlights and sounded her horn to alert the other driver that she thought the vehicle's high beam headlights were turned on. The oncoming vehicle was a police patrol unit driven by Sergeant Brian Thacker of the Rio Rancho Police Department. The flashing lights and honking horn drew the attention of Sergeant Thacker. Additionally, Plaintiff's vehicle had a cracked rear taillight. After Sergeant Thacker initiated a traffic stop, he observed that Plaintiff appeared to be intoxicated. Subsequent test results established that Plaintiff's blood alcohol concentration was

almost three times the legal limit.  Sergeant Thacker arrested Plaintiff and charged her with aggravated driving while intoxicated, engaging in prohibited activities while driving, and driving with a broken taillight.  Subsequently, Plaintiff's driver's license was revoked for driving while intoxicated and the criminal charges were dismissed.

On September 19, 2014, Plaintiff filed suit in this Court against Sergeant Thacker and the City of Rio Rancho, alleging that the traffic stop violated her constitutional rights.  (Doc. 1.) Sergeant Thacker moved for summary judgment based on qualified immunity.  (Doc. 10.)  The Court granted the motion.  (Doc. 18.)  In its decision, the Court observed that Plaintiff had not challenged the constitutionality of the City of Rio Rancho's municipal ordinance that prohibits certain activities while driving.  (*Id.*)  Thereafter, Plaintiff moved to amend her Complaint to drop her claims against Sergeant Thacker and allege that the ordinance violates the First Amendment.  (Doc. 22-1.)  The Court granted Plaintiff's Motion to Amend her Complaint, finding that the proposed amendment would facilitate a decision on the merits.  (Doc. 26.)

On April 22, 2015, Plaintiff filed an Amended Complaint against Defendant City of Rio Rancho alleging that Rio Rancho Municipal Code Section 12-6-12.18(5) (hereinafter "Ordinance") is overbroad in violation of the First Amendment.  (Doc 29.)  The Ordinance states:

> No person shall . . . operate a motor vehicle's equipment, including but not limited to the vehicle horn or lights, in such manner as to distract other motorists on the public way or in such a manner as to disturb the peace.

Rio Rancho Mun. Code § 12-6-12.18(5).

In her Amended Complaint, Plaintiff claims that the Ordinance chills her ability to exercise her First Amendment right of free speech by flashing her headlights or sounding her horn to convey messages to other motorists.  (Doc. 29.)  Plaintiff alleges both an as-applied and

an overbreadth challenge to the Ordinance.  (*Id.*)  Plaintiff seeks declaratory and injunctive relief. (*Id.*)

Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary Injunction. (Doc. 31.)  The Court denied this motion on the grounds that Plaintiff's injuries were speculative, it was unclear whether the Ordinance restricts constitutionally-protected conduct, Plaintiff failed to establish irreparable harm, and Plaintiff failed to demonstrate that the balance of equities and public interest weighed in her favor.  (Doc. 36.)

Defendant now moves for summary judgment on all remaining claims, arguing that Plaintiff cannot show the Ordinance is substantially overbroad, Plaintiff cannot show that the Ordinance permits officers unfettered discretion, Plaintiff cannot show that the Ordinance regulates protected speech, Plaintiff cannot show irreparable harm,[1] and the Ordinance promotes the significant public safety interests of preserving the safety of Defendant's roadways and maintaining the peace.  (Doc. 49.)  Plaintiff responds that the Ordinance is facially invalid, the Ordinance regulates protected speech, Plaintiff has standing to mount a facial challenge to the Ordinance, and the Ordinance is substantially overbroad.  (Doc. 51.)  In its reply, Defendant argues that Plaintiff did not meet her summary judgment burden, there is no specific case or controversy, Plaintiff's claims are not ripe, Plaintiff has not shown a risk of irreparable harm, and the authorities cited by Plaintiff do not support her premise.  (Doc. 58.)

---

[1]  Defendant argues that it is entitled to summary judgment on Plaintiff's First Amendment claims because Plaintiff has failed to establish irreparable harm.  (Doc. 49 at 6-7 and Doc. 58 at 7.)  Irreparable harm was germane to the analysis of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.  (Doc. 31.)  As a result, the Court addressed irreparable harm in its Memorandum Opinion and Order of June 10, 2015 that denied Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction on procedural grounds.  (Doc. 36.) However, irreparable harm is not relevant to the substance of Plaintiff's First Amendment claims which are raised in the motion sub judice.  Because irreparable harm is not implicated by the issues presently under review, the Court declines to address Defendant's arguments concerning irreparable harm herein.

## II.    Legal Standard

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56.  In cases where the moving party will not bear the burden of persuasion at trial, the moving party bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party meets this burden, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a summary judgment motion, the Court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325.  On summary judgment, the Court must view the record in a light most favorable to the non-moving party. *See Taylor*, 713 F.3d at 34.

### III.    Statement of Facts

On January 25, 2014, at approximately 9:41 p.m., Plaintiff was driving on Tulip Road in Rio Rancho when she saw an oncoming car she thought had its high beam headlights turned on. (Doc. 11-1, Martinez Aff. ¶¶ 3–4; Doc. 10-1, Thacker Aff. ¶ 1.)  Plaintiff flashed her headlights and honked her horn to alert the other driver that she thought that the vehicle's high beam headlights were turned on.  (Martinez Aff. ¶4; Thacker Aff ¶ 3.)  The oncoming vehicle was a police patrol unit driven by Sergeant Thacker.  (Thacker Aff. ¶¶ 1–2.)  Plaintiff's actions attracted Sergeant Thacker's attention as she was continuously flashing her headlights and honking her horn.  (Thacker Aff. ¶ 3, Ex. 1.)  The flashing lights and honking horn distracted Sergeant Thacker as he was driving.  (*Id.*)

According to Defendant, as Plaintiff's vehicle passed Sergeant Thacker and Plaintiff slowed down for a stop sign, Sergeant Thacker noticed that Plaintiff's right rear taillight emitted a glaring white light and appeared to be broken.  (Thacker Aff. ¶ 3, Ex. 1.)  Rio Rancho City Ordinance 12-10-1.7(D) prohibits any taillight from emitting a glaring or dazzling light as otherwise prohibited by N.M. Stat. Ann. § 66-3-828.  (*Id.*)

Plaintiff acknowledges that her vehicle had a small crack in the passenger side taillight. (Martinez Aff. ¶ 11.)  However, Plaintiff believes that given the crack's location, no oncoming car could have seen the crack.  (*Id.*)  Plaintiff provided a photograph showing the rear of her vehicle from the driver's side and no taillight crack is visible from this vantage point.  (Doc. 11-2, Ex. 2 at 2.)  Based on this fact, Plaintiff argues that Sergeant Thacker could not have initiated the stop because of the broken taillight, because he would not have seen the crack until after he had already pulled her over.  (Martinez Aff. ¶ 10.)

5

According to Plaintiff, Sergeant Thacker initiated the traffic stop because Plaintiff flashed her headlights and honked her horn.  (Martinez Aff. ¶ 8.)  After Plaintiff's arrest and before her license revocation hearing, Sergeant Thacker made statements indicating that he pulled over Plaintiff because she used her lights and honked her horn, not because of the crack in her taillight.  (Thacker Aff. Ex. 1 at 2.)  Plaintiff avers that the only reason Sergeant Thacker stopped her was because she communicated to Sergeant Thacker that he should check his high beam headlights.  (Martinez Aff. ¶¶ 7–11.)  This factual dispute is immaterial to the legal issues at hand, as the Court has determined that Sergeant Thacker is entitled to qualified immunity because he observed an arguable violation of the Ordinance.  (Doc. 18.)

It is undisputed Sergeant Thacker initiated a traffic stop.   (Thacker Aff. ¶¶ 3–4.) Sergeant Thacker asked Plaintiff why she was honking her horn and flashing her lights. (Thacker Aff. Ex. 1 at 2.)  Plaintiff advised Sergeant Thacker that she thought his high beam headlights were turned on.  (*Id.*)  Sergeant Thacker testified at the license revocation hearing that the police unit he was driving was new and he had received similar complaints about his headlights from other motorists.  (*Id.*)

During the traffic stop, Sergeant Thacker noticed a strong smell of alcohol emanating from the interior of Plaintiff's vehicle and Plaintiff exhibited slurred speech and bloodshot, watery eyes.  (Thacker Aff. ¶ 4.)  Plaintiff's performance on several field sobriety tests indicated that she was impaired.  (*Id.* ¶ 5.)  Based on his observations, Sergeant Thacker concluded that Plaintiff was driving under the influence of alcohol.  (*Id.*)  Plaintiff agreed to a breath alcohol test which revealed a blood alcohol content between .22 and .23 percent.  (*Id.*)  Plaintiff was charged with aggravated driving while intoxicated, engaging in prohibited activities while driving, and driving with a broken taillight.  (Doc. 11-5.)

6

On April 18, 2014, Sergeant Thacker attended a driver's license revocation proceeding for Plaintiff.   (Thacker Aff. Ex. 1.)   The hearing officer found that Sergeant Thacker had reasonable suspicion for the stop based on his observation of the broken taillight.   (Thacker Aff. Ex. 1 at 3.)   The hearing officer determined that he did not need to consider Plaintiff's attorney's arguments that the Ordinance was overly broad and that, in any event, her attorney's arguments were not persuasive.   (*Id.*)   The hearing officer revoked Plaintiff's license for six months, required Plaintiff to use an ignition interlock device, and imposed fees.   (*Id.* at 4.)

On September 9, 2014, the criminal charges against Plaintiff were dismissed.   (Thacker Aff. ¶ 7.)   According to a newspaper article submitted by Plaintiff, the municipal court suppressed the results of the field sobriety tests and the breath alcohol test based on First Amendment arguments raised by Plaintiff's attorney.   (Doc. 11-3.)   According to Sergeant Thacker's affidavit, the criminal charges were dismissed because the prosecutor failed to file required documents.   (Doc. 10-1.)   Although the parties have submitted conflicting evidence on this point, the reason the criminal charges were dismissed is immaterial to the legal issues at hand.

Plaintiff testified in her deposition that when a person flashes their headlights they are "trying to communicate either their brights are on and you can't see or something else is going on." (Doc. 49-1; Martinez Dep. at 42.)   Prior to this incident, Plaintiff did not usually flash her headlights while driving.   (Martinez Dep. at 30.)   Plaintiff has not flashed her headlights at an oncoming vehicle to communicate before or since the incident.   (*Id.*)   Plaintiff has considered flashing her headlights at oncoming traffic for illumination but not out of a desire to communicate anything.   (Martinez Dep. at 32, 33.)   During her deposition, Plaintiff agreed that since the time she learned to drive, the only time Plaintiff flashed her headlights at another car

was when she was driving while intoxicated.  (Martinez Dep. at 31.)  Plaintiff is unaware of anyone who wished to flash their headlights, but did not do so because they felt intimidated by the Ordinance.  (Martinez Dep. at 48.)

Plaintiff states in her affidavit that: "Since [she] was stopped, ticketed, and prosecuted for flashing her headlamps to communicate with another motorist, [she] refrained from doing so and will continue to refrain from doing so in the future because [she] fear[s] that, if [she] were to do so, [she] would put [her]self at risk of being stopped, cited, and prosecuted for doing so."  (Doc. 11-1, Martinez Aff. ¶ 12.)  The New Mexico Driver Manual advises drivers to "flick [their] headlights to alert other road users [they] are there" and "to use their horn to get [other drivers'] attention."  (Doc. 11-1.)

## IV.   Discussion

### A.   Plaintiff has standing to challenge the Ordinance

While Defendant does not directly argue Plaintiff's standing to challenge the Ordinance, Defendant questions whether this matter presents a justiciable case or controversy.  (Doc. 58 at 6–7.)  Standing is a constitutional requirement, grounded in Article III, which requires litigants to have suffered an injury that is traceable to the defendant and that can be redressed by court action.  *See Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc).  As a result standing is a jurisdictional issue that must be addressed as a threshold matter.  *Id.*  The plaintiff bears the burden of establishing standing.  *Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016).  However, the Court has an independent duty to determine whether the dispute presents a justiciable controversy.  *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002).  Moreover, questions concerning justiciability may be raised at any time.  *See Bd. of Cnty. Comm'rs of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1111 (10th Cir.

2002).   Accordingly, the Court deems it prudent to discuss whether Plaintiff has standing to challenge the Ordinance.

"The Supreme Court's standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement . . . and prudential standing which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction." *Wilderness Soc'y.*, 632 F.3d at 1168 (quotation omitted).   To establish Article III standing, a plaintiff must demonstrate standing to sue by establishing "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"   *See Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).   The plaintiff's injury, moreover, must be "actual or imminent, not conjectural or hypothetical."   *Lujan*, 504 U.S. at 560 (quotation omitted).   Standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction."   *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009).

It bears underscoring that the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case."   *Lujan*, 504 U.S. at 561.   Thus, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."   *Id.*   "At the summary-judgment stage, mere allegations no longer suffice; instead 'the elements of standing must be set forth, through specific facts, by affidavit or other evidence.'"   *United States v. Supreme Court of N.M.*, 2016 WL 3166830, *7 (10th Cir. June 7,

2016) (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004)); *accord Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1298 (10th Cir. 2008).

The record, construed in the light most favorable to Plaintiff, makes clear that Plaintiff was cited under the Ordinance for flashing her headlights and sounding her horn to communicate with another driver. Although the charge for violating the Ordinance was ultimately dismissed, Plaintiff retained a lawyer and the charge remained pending for over eight months. Additionally, Plaintiff stated in her affidavit that she has refrained from flashing her headlights and honking her horn in order to communicate with other drivers and will continue to refrain from doing so in the future because she fears enforcement of the Ordinance.

Construed in the light most favorable to Plaintiff, the record establishes that Plaintiff suffered an invasion of a legally protected interest that is concrete and particularized as well as actual or imminent. *See Spokeo*, 136 S.Ct. at 1548. The record also establishes a sufficient causal connection between the injury and the Ordinance and that a favorable decision would redress the injury. *See Lujan*, 504 U.S. at 561. Under these circumstances, Plaintiff has established Article III standing to challenge the Ordinance.

Plaintiff also has prudential standing to challenge the Ordinance. In most cases "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others . . . ." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). However, "within the context of the First Amendment," courts have recognized "a lessening of prudential limitations on standing," which allows a plaintiff to facially challenge a law or policy even if the plaintiff's own expression is not constitutionally protected. *ACORN v. City of Tulsa*, 835 F.2d 735, 738 (10th Cir. 1987). In other words, when a plaintiff with constitutional standing brings a First Amendment facial challenge to

a law, the prudential standing requirement is waived. *Winsness v. Yocom*, 433 F.3d 727, 734 (10th Cir. 2006); *see also D.L.S. v. Utah*, 374 F.3d 971, 976 (10th Cir. 2004). In that Plaintiff has Article III standing to challenge the Ordinance, she has prudential standing to challenge the Ordinance on First Amendment grounds.

**B.      Plaintiff's claims are ripe for adjudication**

Defendant contends that Plaintiff's claims are not ripe for adjudication because Plaintiff has not shown that the Ordinance chills speech. (Doc. 58 at 6–7.) The doctrine of ripeness originates from the same Article III limitation as standing. *See Susan B. Anthony Lists*, 134 S.Ct. at 2341 n.5. The doctrine of ripeness, "aims to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication." *Cellport Sys., Inc. v. Peiker Acoustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014) (quotation omitted).

The ripeness inquiry "focuses not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention." *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (quotation omitted). In order for a claim to be ripe, and therefore justiciable under Article III, the claim must present a live controversy advanced in a "clean-cut and concrete form." *Renne v. Geary*, 501 U.S. 312, 322 (1991).

Generally, a two-factor test applies to determine whether a claim is ripe. *Kansas Judicial Review Bd. v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (quotation omitted). This test evaluates "the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration." *Id.* However, the ripeness analysis is "relaxed somewhat" in the context of a First Amendment facial challenge because an unconstitutional law may chill free speech. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). In such a case, three factors apply to evaluate the ripeness of a claim: "(1) hardship to the

11

parties by withholding review; (2) the chilling effect the challenged law may have on First Amendment liberties; and (3) fitness of the controversy for judicial review." *Id.* at 1499–1500.

Construed in the light most favorable to Plaintiff, the record establishes that Plaintiff's claims are ripe for adjudication.  Plaintiff has satisfied the first ripeness factor because she presented her affidavit evincing a risk of future prosecution under the Ordinance.  *See id.* Plaintiff has satisfied the second factor as she averred in her affidavit that the Ordinance has chilled her ability to communicate with other drivers by flashing her headlights and sounding her horn. *See id.*  Finally, with respect to the third ripeness factor, the purely legal nature of the First Amendment issues presented weigh in favor of finding the claims fit for judicial review.  *See id.* Under these circumstances, Plaintiff has established that her claims are ripe for adjudication.

### C.     Plaintiff's actions qualify as expressive conduct

Defendant asserts that the First Amendment does not protect Plaintiff's actions of flashing her headlights and sounding her horn because such actions do not qualify as expressive conduct within the meaning of the First Amendment.

The First Amendment, as applied to state and local governments through the Fourteenth Amendment, provides that state actors "shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.  "The First Amendment literally forbids the abridgment only of 'speech,' but [the Supreme Court] ha[s] long recognized that its protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (holding that burning the American flag was sufficiently expressive to warrant First Amendment protection).  As a consequence, the Supreme Court has "extended First Amendment protection only to conduct that is inherently expressive." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006).

12

Significantly, however, the Supreme Court has "rejected the view that conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea." *Id*. at 65–66 (quotation omitted).  To determine whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, the Supreme Court asks whether "'[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Johnson*, 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410–411 (1974)).

Plaintiff relies on two cases from outside the Tenth Circuit to support her contention that her conduct qualifies for protection by the First Amendment.  *See Elli v. City of Ellisville*, 997 F. Supp. 2d 980 (E.D. Mo. 2014); *State v. Immelt*, 267 P.3d 305 (Wash. 2011).  In the *Elli* case, a driver challenged the constitutionality of a local traffic ordinance that prohibited flashing vehicular lights except on specified vehicles.  *See Elli*, 997 F. Supp. 2d at 982–83.  The *Elli* court held that a driver's flashing of headlamps to warn drivers approaching the opposite direction of a speed trap was expressive conduct protected by the First Amendment.  *Id*. at 984.  In the *Immelt* case, the Washington Supreme Court decided that a county noise ordinance was overbroad in violation of the First Amendment because it prohibited the use of car horns for purposes other than public safety.  *Immelt*, 267 P.3d at 305.  Neither of these cases are binding.  Conversely, other authorities suggest that such actions do not qualify as expressive conduct worthy of First Amendment protection.  *See, e.g., Meaney v. Dever*, 326 F.3d 283, 287–88 (1st Cir. 2003) (expressing misgivings that horn sounding constitutes expressive conduct but assuming arguendo that it does and rejecting First Amendment claims on other grounds); *State v. Compas*, 964 P.2d 703, 709 (Mont. 1998) (holding that the defendant's conviction for beeping her car horn to protest a local recreational vehicle park did not violate her rights to free expression); *Weil v.*

13

*McClough*, 618 F. Supp. 1294, 1298 (S.D.N.Y. 1985) (rejecting an overbreadth challenge to a local ordinance that prohibited horn honking except to provide warning of imminent danger). While these cases are not on point they demonstrate the difficulty in applying First Amendment principles to the myriad situations presented in our courts.

In this case, the Court finds it material that Plaintiff stated in her affidavit that she flashed her headlights and honked her horn in order to express a message to another driver that his high beam headlights were turned on.  Moreover, Plaintiff testified in her deposition that when a driver flashes his or her headlights he or she intends to communicate that the other driver's high beam headlights are turned on.  Indeed, Sergeant Thacker's testimony at the driver's license revocation hearing indicates that other drivers had complained that his headlights were too bright.  Additionally, the New Mexico Driver Manual advises drivers to flash their headlights and honk their horn to alert other drivers and draw their attention.  Construed in the light most favorable to Plaintiff, the record establishes that Plaintiff intended to convey a particularized message with her conduct and the likelihood was great that the other driver would understand the message.  As a result, under the circumstances of this case and construing the record in the light most favorable to Plaintiff, the Court concludes that Plaintiff's actions qualify as expressive conduct covered by the First Amendment.

### D.  The Ordinance is content neutral[2]

The First Amendment provides that "a government, including a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'"  *Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218, 2226 (2015) (quoting *Police Dep't. of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)).  "Content-based laws—those

---

[2]  While the parties do not address this issue, the Court finds classification of the Ordinance is necessary to apply First Amendment principles.

that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."  *Id.* (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991)).  For this reason, whenever a restriction is challenged on First Amendment grounds, it must be determined at the outset whether that restriction is "content-based" or "content-neutral."  *Reed*, at 2227.

An ordinance regulating speech is "content-based" if it "applies to particular speech because of the topic discussed or the idea or message expressed."  *Id.*  When deciding whether a challenged law is content-based, a court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys."  *Id.*  A content-based restriction is presumptively unconstitutional and subject to strict scrutiny.  *Id.* at 2226.

By contrast, regulations that are unrelated to the content or viewpoint of speech are subject to an intermediate level of scrutiny because, generally, "they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue."  *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994); *see also Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293–94 (1984).  "Government regulation of expressive activity is content neutral so long as it is '*justifi*ed without reference to the content of the regulated speech.'"  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (emphasis supplied by *Ward*) (quoting *Clark*, 468 U.S. at 293 and citing *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 648 (1981); *Va. Pharmacy Bd. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976); *Boos v. Barry*, 485 U.S. 312, 320-321 (1988) (opinion of O'Connor, J.)); *see also Taylor*, 713 F.3d at 43 n.15 ("A policy is content neutral if its restrictions do not hinge on either the viewpoint or the subject ma[tter] of the speech.").  In distinguishing between the classifications of content-based and

content-neutral, "[t]he government's purpose is the controlling consideration." *Ward*, 491 U.S. at 791. In this case, the Ordinance says nothing about the ideas or opinions that a driver may express. *See Doe v. Shurtleff*, 628 F.3d 1217, 1223 (10th Cir. 2010). Rather, the Ordinance restricts headlight flashing and horn honking to prevent driver distraction and to maintain the peace. Thus, the Ordinance is content neutral.

As a content-neutral regulation, the Ordinance law is subject to intermediate scrutiny, meaning that the Ordinance will be upheld if it "(1) serves a substantial government interest and (2) is 'narrowly drawn' to serve that interest 'without unnecessarily interfering with First Amendment freedoms.'" *Am. Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir. 2000) (quoting *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980)).

### E. Plaintiff asserts two types of First Amendment challenges

In her Amended Complaint, Plaintiff alleges both an as-applied and an overbreadth facial challenge to the Ordinance. (Doc. 29.) In its Motion for Summary Judgment to Dismiss All Remaining Claims, Defendant does not distinguish between the two types of claims. However, in her response brief, Plaintiff states that she seeks only facial invalidation of the Ordinance and she presents no argument in support of her as-applied challenge in response to Defendant's Motion for Summary Judgment. In the reply brief, Defendant states that the Ordinance is valid on its face. In light of the allegations in the Amended Complaint, the Court will address both the as-applied and facial challenges despite the lack of briefing.

Two types of First Amendment challenges may be brought against a law; facial and as applied. *Hawkins v. City & Cnty. of Denver*, 170 F.3d 1281, 1286 (10th Cir. 1999). "A facial challenge is a head-on attack [on a] legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." *United States v. Supreme*

*Court of N.M.*, 2016 WL 3166830 at *13. "In contrast, an as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case." *Id.*; *see also N.M. Youth Organized v. Herrera*, 611 F.3d 669, 677 n.5 (10th Cir. 2010) (stating that an "'as-applied' challenge to a law acknowledges that the law may have some potential constitutionally permissible applications, but argues that the law is not constitutional as applied to particular parties.").

The Tenth Circuit has explained that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *United States v. Supreme Court of N.M.*, 2016 WL 3166830, *13 (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010); citing Richard H. Fallon, Jr., *As-Applied & Facial Challenges & Third-Party Standing*, 113 Harv. L. Rev. 1321, 1336 (2000) ("Facial challenges are not sharply categorically distinct from as-applied challenges to the validity of statutes.")). "The distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United*, 558 U.S. at 331.

Notably, the Supreme Court has instructed courts facing simultaneous as-applied and facial challenges to first resolve the as-applied challenge before addressing the facial challenge in order to avoid "proceed[ing] to an overbreadth [facial] issue unnecessarily." *See Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989). As explained by the Supreme Court, this is partially a function of efficiency given that the facial analysis is more taxing "since it requires determination whether the statute's overreach is substantial, not only as an absolute matter, but 'judged in relation to the statute's plainly legitimate sweep,' and therefore

requires consideration of many more applications than those immediately before the court." *Id.* (citing *Broadrick*, 413 U.S. at 615).  As a result, the Court will address Plaintiff's as-applied challenge first.

### F.    The Ordinance as applied did not violate the First Amendment

When considering an as-applied challenge, a court considers the challenged statute "in light of the charged conduct."  *See United States v. Franklin–El*, 554 F.3d 903, 910 (10th Cir. 2009); *see also Galbreath v. City of Okla. City*, 568 F. App'x. 534, 539 (10th Cir. 2014) (for an as-applied challenge, courts "must tether our analysis to the factual context in which the ordinance was applied").  As a content-neutral regulation, the Ordinance is subject to intermediate scrutiny, meaning that the law will be upheld if it "(1) serves a substantial government interest and (2) is 'narrowly drawn' to serve that interest 'without unnecessarily interfering with First Amendment freedoms.'" *Giani*, 199 F.3d at 1247.  Defendant undoubtedly has compelling government interests in promoting traffic safety by limiting driver distractions and preventing drivers from disturbing the peace.  Thus, consideration of the Ordinance focuses on whether it unnecessarily interferes with Plaintiff's First Amendment freedoms in serving these government interests.

The Court assumes arguendo that Plaintiff was stopped for violating the Ordinance and the criminal charges were dismissed because Plaintiff's lawyers raised a First Amendment challenge before the municipal court.  However, the reason for the stop and the reason for the dismissal of the charges are immaterial to the question of whether the Ordinance as applied to Plaintiff violated the First Amendment.  Rather the salient questions are whether the Ordinance serves a substantial government interest and whether it is narrowly drawn to serve that interest without unnecessarily interfering with First Amendment freedoms.

In this case, it is undisputed that Plaintiff continuously flashed her headlights and honked her horn to alert another driver that the vehicle's high beam headlights were turned on. Plaintiff's actions distracted Sergeant Thacker, who was driving the other vehicle. Defendant has a substantial government interest in promoting traffic safety on it roadways by preventing the distraction of motorists. Plaintiff's actions of continuously flashing her headlights and honking her horn distracted another driver. The Ordinance does not prohibit all headlight flashing or horn honking but only headlight flashing and horn honking that distracts other drivers or disturbs the peace. As a result, the Ordinance is narrowly drawn to serve these government interests without unnecessarily interfering with First Amendment freedoms. The Ordinance did not unnecessarily interfere with Plaintiff's First Amendment freedoms in serving the substantial government interests of traffic safety and maintaining the peace. Therefore, the Court finds on the undisputed material facts shown by the record that Plaintiff's as-applied challenge to the Ordinance fails as a matter of law.

### G. The Ordinance is not overbroad on its face

"Only a law that is substantially overbroad may be invalidated on its face." *City of Hous. v. Hill*, 482 U.S. 451, 458 (1987) (citations omitted). Whether an ordinance is substantially overbroad depends primarily upon whether it reaches a substantial amount of protected speech or conduct. *Id.* (citing *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, (1982)). A law is overbroad under the First Amendment, and therefore unconstitutional, if "it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002); *Bd. of Airport Comm'rs of L.A. v. Jews for Jesus*, 482 U.S. 569, 574 (1987).

The Supreme Court has cautioned that application of the overbreadth doctrine is "strong medicine" that should be used "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613. The plaintiff bears the burden of demonstrating substantial overbreadth exists from the text of the statute and the facts of the case. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003). The Supreme Court has admonished that an overbreadth challenge will "[r]arely . . . succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Id.* at 124.

It bears underscoring that the challenged law's overbreadth must be substantial, not only in the absolute sense but also relative to its plain sweep. *Williams*, 553 U.S. at 292. The plaintiff must show that the challenged law regulates substantially more expression than the First Amendment allows governments to regulate. *See Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 69 (1981). Thus, even where a fair amount of constitutional speech is implicated, courts do not invalidate the law unless significant imbalance exists.

In addition to showing that the law is substantially overbroad, the plaintiff must establish that the overbreadth is real. *Broadrick*, 413 U.S. at 615; *see also West v. Derby Unified Sch. Dist.*, 206 F.3d 1358, 1367 (10th Cir. 2000) (requiring plaintiff establish a "realistic" chilling effect on the free speech rights of third parties not before the court who have been prevented from engaging in protected speech). Indeed, the fact one can conceive of an impermissible application of an ordinance is not sufficient to render it susceptible to an overbreadth challenge. *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the [ordinance] itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801.

20

The first step in the overbreadth analysis "is to construe the challenged [ordinance]," as "it is impossible to determine whether a statute reaches too far without first knowing what the [ordinance] covers." *United States v. Stevens*, 559 U.S. 460, 464 (2013) (quoting *Williams*, 553 U.S. at 293). The Ordinance reads: "No person shall . . . operate a motor vehicle's equipment, including but not limited to the vehicle horn or lights, in such manner as to distract other motorists on the public way or in such a manner as to disturb the peace." Rio Rancho Mun. Code § 12-6-12.18(5).

Based on its plain language, it is clear that the Ordinance is directed toward conduct not speech, and the conduct it proscribes is not necessarily associated with speech. Significantly, the Ordinance is targeted at the legitimate government interests of traffic safety and preserving the peace. The Ordinance does not prevent all operation of a vehicle's horn and lights but only such operation that would distract other motorists or disturb the peace. Under these circumstances, the Court does not find a realistic danger that the Ordinance will chill the thought and expression of third parties. *See Taxpayers for Vincent*, 466 U.S. at 801 (explaining that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds").

It is material that the paradigmatic cases of unconstitutional overbreadth involve the possibility of criminal sanctions for engaging in protected speech. *See, e.g.*, *Williams*, 553 U.S. at 292 (considering the constitutionality of a criminal child pornography statute). Clearly, a law that criminalizes a substantial amount of speech protected by the First Amendment may pose a grave danger to the free exchange of ideas. However, the Ordinance does not criminalize a substantial amount of protected expressive activity or pose so substantial a risk as to justify

invalidation.  *See Hicks*, 539 U.S. at 124; *see also Williams*, 553 U.S. at 292 (explaining that "invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects").  As Plaintiff has not established substantial overbreadth, she has not shown that the Ordinance is facially overbroad.

Plaintiff contends that the Ordinance is overbroad because it permits police officers to use too much discretion.  Plaintiff argues that because the Ordinance does not define the word "distract," police officers will use their subjective discretion to determine if they themselves were distracted, and thus if a citation is appropriate.  *See* Rio Rancho Mun. Code § 12-6-12.18(5).  Plaintiff contends that this result is problematic and widens the breadth of conduct the Ordinance prohibits to encompass any and all usage of a vehicle's horn or headlight.  As discussed *supra*, by its plain terms the Ordinance does not prohibit all use of a vehicle's horn or headlights but only such use that would distract other motorists or disturb the peace.  Nonetheless, Plaintiff analogizes the Ordinance to a Houston city ordinance that prohibited verbal interruptions of police officers.  *See Hill*, 482 U.S. at 455.

In *Hill*, the Supreme Court addressed a municipal ordinance that "makes it 'unlawful for any person to . . . in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty.'  *Id.* at 461.  The Court concluded that this portion of the ordinance "deals not with core criminal conduct, but with speech" and that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  *Id.* at 460, 461.  The Court found that the ordinance was "not limited to fighting words nor even to obscene or opprobrious language" but prohibited protected speech.  *Id.* at 462.  The Court concluded that the ordinance was "substantially overbroad" and facially invalid because it "criminalize[d] a

substantial amount of constitutionally protected speech, and accord[ed] the police unconstitutional discretion in enforcement." *Id.* at 466–67.

The Supreme Court distinguished the ordinance in *Hill* from a disorderly conduct statute that withstood a facial challenge in *Colten v. Kentucky*, 407 U.S. 104 (1972). The Court noted that the statute in *Colten* made it a crime if a person "with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof . . . [c]ongregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." *Colten*, 407 U.S. at 108 (quoting Ky. Rev. Stat. § 437.016(1)(f) (Supp. 1968)). "The Court upheld the statute [in *Colten*] against an overbreadth challenge because the Kentucky Supreme Court had construed it so that it 'infringe[d] no protected speech or conduct.'" *Hill*, 482 U.S. at 465 n.14 (quoting *Colten*, 407 U.S. at 111).

In this case, the Ordinance proscribes conduct by a person who "operates a motor vehicle's equipment . . . in such manner as to distract other motorists on the public way or in such a manner as to disturb the peace." *See* Rio Rancho Mun. Code § 12-6-12.18(5). Read in the context of traffic safety and maintaining the peace, the prohibition against distracting other motorists does not criminalize a substantial amount of protected speech, as argued by Plaintiff. Unlike the ordinance in *Hill* prohibiting verbal interruptions, the Ordinance prohibits only conduct that negatively impacts traffic safety. The Ordinance reaches speech, if at all, only when such speech "distracts other motorists on the public way or in such a manner as to disturb the peace." *See* Rio Rancho Mun. Code § 12-6-12.18(5). In that the Ordinance is focused on preventing driver distraction and preserving the peace it does not criminalize a substantial amount of protected speech. Thus, the Ordinance is not constitutionally overbroad or facially invalid.

Finally, Plaintiff's speculation that the Ordinance might proscribe a substantial amount of constitutionally-protected speech has no factual basis and is insufficient to withstand summary judgment.  *See Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1201 (10th Cir. 2012) (concluding that a city may constitutionally restrict the displaying of signs or banners on highway overpasses based on significant interest in traffic safety and in the avoidance of interference with official traffic control devices on highway overpasses); *West*, 206 F.3d at 1367–68 (limiting  a school district's anti-harassment policy to only inciting speech where no instance in the record established that policy had ever been applied to possession of "textbooks and other school materials with legitimate educational purposes").  In that a substantial number of the Ordinance's applications are undoubtedly constitutional, the Court declines to use the "strong medicine" of overbreadth to invalidate the Ordinance.  *Hicks*, 539 U.S. at 124 (*quoting Broadrick*, 413 U.S. at 613).

## V.    Conclusion

Construed in the light most favorable to Plaintiff, the record establishes that Plaintiff has standing to challenge the Ordinance and her claims are ripe for adjudication.  The Ordinance is content neutral and subject to intermediate scrutiny.  Plaintiff's actions of flashing her headlights and sounding her horn to advise another driver that she thought his high beam headlights were turned on qualify as expressive conduct within the meaning of the First Amendment.  The Ordinance is supported by the substantial government interests of promoting traffic safety and maintaining the peace.  The Ordinance as applied to Plaintiff did not unnecessarily interfere with her First Amendment rights.  Plaintiff has not established that the Ordinance is overbroad in violation of the First Amendment.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment to Dismiss All

Remaining Claims (Doc. 49) is **GRANTED**.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**